# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

SUN PRAIRIE AREA SCHOOL DISTRICT
501 SOUTH BIRD STREET
SUN PRAIRIE, WI 53590,

      Plaintiff,                       Case No. 20-149

      v.

IT'S LEARNING INC.
ONE GATEWAY CENTER, SUITE 702
NEWTON, MA 02458,

      Defendant.

## COMPLAINT

NOW COMES the Plaintiff, Sun Prairie Area School District ("District"), and as and for its Complaint against the Defendant, It's Learning Inc., alleges and shows the Court as follows:

### PARTIES

1. The District is classified as a common school district under Wisconsin law. Its principal office is located at 501 South Bird Street, Sun Prairie, WI 53590.

2. The Defendant, It's Learning Inc., is a Delaware Corporation with its principal office located at One Gateway Center, Suite 702, Newton, MA 02458. Its registered agent for service of process is Robert Cardone, 36 Cordage Park Circle, Suite 302, Plymouth, MA 02360.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the District is a citizen of a different state than the Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has personal jurisdiction over the Defendant pursuant to Wis. Stat. §§ 801.05(1), (3), (4), and (5) and the exercise of that jurisdiction comports with due process as the Defendant has engaged in substantial and not isolated activities in the State of Wisconsin.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the District's claims arose in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

6. In 2016, the District commenced a process to obtain proposals from vendors for a comprehensive Learning Management System (LMS), including a centralized hub for foundational course content, learning resources, learning applications, common assessment tools, and student portfolios.

7. During the process to obtain proposals, the District informed potential vendors that the LMS needed to integrate with the District's third party applications.

8. The District informed potential vendors that the LMS needed to provide clear alignment of curriculum with standards, instruction, assessment, portfolios, grading and report cards.  In addition, the District informed potential vendors that the LMS needed to be the "go to" site for District employees' resources, including the Intranet, Curriculum and Instruction, Professional Learning Communities, and online professional development.  Further, the District informed potential vendors that the LMS needed to provide resources for families, including a parent portal for schoolwork and grades, and online workshops for parents/guardians.

9. The Defendant was one of the vendors that submitted a proposal to the District for a comprehensive LMS.

10. The Defendant traveled to Wisconsin and presented to various administrators and staff members of the District regarding the features of its LMS. In addition, several staff members of the District participated in a pilot study of the LMS.

11. The Defendant represented to the District that its LMS met the District's goals and requirements, including, but not limited to, integration with the District's third party applications. The Defendant stated that it would provide "seamless integration" with Infinite Campus, which is the District's student information system.

12. The Defendant also represented to the District that its LMS was different than others because of its "complete K-12 focus." The Defendant displayed an early learner platform to the District in Wisconsin when presenting the features of its LMS.

13. The early learner platform was a key factor in why the District chose to work with the Defendant as opposed to other vendors.

14. The Defendant also represented to the District that its LMS was different than others because it included a "single sign on," with access to various applications.

15. As of April 1, 2016, the District entered into a 51-month Proposal with the Defendant for a total of $274,600.00, consisting of annual licensing fees, training costs, integration costs, project management costs, and other expenses.

16. Subsequent to signing the Proposal, the Defendant regularly billed the District on an hourly basis for what it deemed additional project management fees.

17. To date, the District has paid the Defendant approximately $205,250.00.

18. After displaying the early learner platform to the District and representing it as part of its LMS, the Defendant failed to notify the District that its early learner platform was no longer available.

19. After entering into the Proposal with the Defendant, the District learned that the early learner platform was no longer available.

20. The Defendant refused to refund the licensing fees paid by the District for the early learner platform, claiming that it was unable to cancel the licenses. The Defendant also refused to restructure the District's licenses. The Defendant continued to invoice the District for licensing fees for 7,600 users.

21. In addition to the lack of an early learner platform, the LMS never functioned as represented to the District. For instance, features that the Defendant represented as part of the LMS, and displayed to the District during presentations in Wisconsin, were either not available or significantly delayed, including, but not limited to, Google Integration, Test Mode Browser for Chromebooks, Infinite Campus Grade Passback, and a Parent Portal.

22. The Defendant failed to disclose to the District that these features were not currently available or that they would cost more.

23. After entering into the Proposal, the Defendant demanded that the District pay additional amounts for features that the Defendant had previously represented to the District were included in the LMS, including, but not limited to, Test Mode Browser for Chromebooks, Infinite Campus Grade Passback, Advanced Reporting, and Content LTI Integration.

24. There were also numerous issues with integration of the District's third party applications, which directly impacted the functionality of the LMS.

25. The Defendant failed to provide the District with a functional LMS, and usage of the LMS was minimal. The District did not receive any benefit from the Defendant's LMS.

26. In approximately June of 2018, representatives of the District met with representatives of the Defendant, including, but not limited to, the Defendant's President, to

discuss termination of the relationship. At this meeting, the Defendant requested that the District refrain from terminating the parties' relationship and asked for more time to provide a functional LMS, thereby increasing usage.

27. The District and the Defendant agreed to a 90-day "Re-Engagement Plan" for the Defendant to provide a functioning LMS, which replaced the original Proposal. The District and the Defendant further agreed that the Defendant must demonstrate an increase in usage of 75% within six (6) months. If that did not occur, the District and the Defendant agreed to end their relationship.

28. From August 28, 2018 to September 8, 2018, the most critical time during a school year for a school district to have a functioning LMS, the LMS was not functional. Teachers and students were unable to access their courses and rosters in the LMS, and the District was unable to use the professional development time to train staff on the LMS. After this, usage decreased to approximately twelve (12) users.

29. The District later learned that this problem was caused by the Defendant running an outdated Transport Layer Security (TLS), leaving the District's data insecure.

30. After the 6-month period concluded, with usage decreasing to a minimal level, the District contacted the Defendant numerous times to implement the parties' agreement to discontinue the relationship and to safeguard the District's data.

31. The Defendant failed to respond to the District for months.

32. Despite failing to respond to the District, on June 1, 2019, the Defendant billed the District another $58,900.00 for annual licensing fees and other costs, which the District has no obligation to pay.

33. The District has incurred significant damages as a result of the Defendant's conduct, in an amount exceeding $75,000.00.

## COUNT I – INTENTIONAL MISREPRESENTATION

34. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

35. The Defendant made a representation of fact that its LMS included an early learner platform.

36. The Defendant displayed the early learner platform to the District in Wisconsin as part of its sales pitch and represented that its LMS was different from its competitors because of its "complete K-12 focus."

37. The early learner platform was a key factor in why the District chose to work with the Defendant.

38. The Defendant's representation of fact was untrue, as the early learner platform no longer existed after the District entered into the Proposal with the Defendant, and the Defendant never informed the District that its early learner platform was obsolete.

39. The Defendant made additional representations of fact regarding the features of its LMS, including displaying such features to the District during its sales pitch in Wisconsin and in subsequent demonstrations.

40. In addition, the Defendant represented that its LMS would integrate with the District's third party applications, including "seamless integration" with Infinite Campus.

41. The Defendant's additional representations of fact were untrue as the features that it represented (and displayed) as included in the LMS were not, and the Defendant's LMS did not integrate with the District's third party applications, as represented by the Defendant.

42. The Defendant failed to disclose to the District that these features were not currently available or that they would cost more.

43. The Defendant made the untrue representations knowing the representations were untrue or recklessly without caring whether they were true or false.

44. The Defendant made the representations with intent to deceive and induce the District to act upon them to the District's damage.

45. The Defendant believed such representations to be true and relied upon them.

46. The District incurred significant damages as a result of the Defendant's misrepresentations, including all amounts paid to the Defendant to date, as well as other damages to be proven at trial.

## COUNT II – BREACH OF CONTRACT

47. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

48. In June of 2018, to induce the District to refrain from terminating the relationship with the Defendant and to allow the Defendant more time to provide a functional LMS, the Defendant offered the District a Re-Engagement Plan which replaced its original 51-month Proposal.

49. As part of the Re-Engagement Plan, the District submitted payment to the Defendant in the amount of $57,529.20 on or about November 15, 2018.

50. The parties agreed that if usage of the LMS did not increase by 75% by January of 2019, as a result of the Defendant having a functional LMS in place under the Re-Engagement Plan, the parties' contractual relationship would terminate.

51. The Defendant still failed to provide a functional LMS, as required under the Re-Engagement Plan, including, but not limited to, the LMS failed to function for 11 days during the most critical timeframe, the start of the school year.

52. As a result of this, as well as other failures on the part of the Defendant under the Re-Engagement Plan, usage decreased below what it was before the Re-Engagement Plan.

53. Despite the further decrease in usage, thereby leading to termination of the parties' contractual relationship as of January of 2019, the Defendant has continued to demand that the District pay another $58,900.00, which the District has no obligation to pay.

54. The District has incurred damages in excess of $75,000.00 as a result of the Defendant's conduct, to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, the District demands judgment against the Defendant as follows:

a. For damages in an amount to be determined at trial;

b. For costs and attorney's fees as allowed by law; and

c. For such other further relief that the Court may deem just and equitable.

## JURY DEMAND

The District demands a trial by jury on all issues so triable.

Dated this 20th day of February, 2020.    STRANG, PATTESON, RENNING,
LEWIS & LACY, S.C., Attorneys for the
Plaintiff, Sun Prairie Area School District


By: __s/Jenna E. Rousseau_____
Shana R. Lewis, SBN 1030620
Jenna E. Rousseau, SBN 1065236

Direct Contact:

Shana R. Lewis
Strang, Patteson, Renning, Lewis & Lacy, s.c.
660 W. Washington Avenue, Suite 303
Madison, WI 53703
Ph. 844.626.902
Fax 608.333.0832
E-mail: slewis@strangpatteson.com

Jenna E. Rousseau
Strang, Patteson, Renning, Lewis & Lacy, s.c.
205 Doty Street, Suite 201
Green Bay, WI 54301
Ph. 844.833.0828
Fax 608.333.0828
E-mail:  jrousseau@strangpatteson.com